IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELENA I. S.,[1]

        Plaintiff,

        v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:18-cv-01214-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Elena S. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

# BACKGROUND

In April 2014, plaintiff applied for benefits, alleging disability as of April 28, 2006, due to bilateral carpal tunnel, asthma, arthritis, lumbago, varicose veins in both legs, left shoulder rotator cuff syndrome, back injury, neuropathy, osteochondroma, headaches, and irregular heartbeat. Tr. 113-14. Born in 1963, plaintiff was 42 years old as of the alleged onset date. Tr. 113.

Plaintiff had previously applied for benefits. On April 14, 2010, an Administrative Law Judge ("ALJ") issued a partially favorable decision, finding that plaintiff was disabled for a closed period beginning on April 28, 2006, and ending on April 28, 2009. Tr. 91. The previous ALJ's decision was based on the severe impairments of degenerative disc disease, asthma, minimal partial tear of the medial collateral ligament, and bilateral carpal tunnel syndrome; however, the latter was no longer a severe impairment after April 28, 2009, due to medical improvement. Tr. 91, 94, 100.

On November 16, 2016, a hearing was held before another ALJ based on plaintiff's 2014 applications, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 44-85. On December 16, 2016, the ALJ issued a decision finding plaintiff not disabled from April 25, 2010, the day after the issuance of the prior ALJ's decision, through the date of the decision in question. Tr. 21-37. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

# STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for evaluating whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one in the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of the prior ALJ decision. Tr. 24. At step two, the ALJ found that the following impairments were medically determinable and severe: "degenerative disc disease of the cervical spine, carpal tunnel syndrome, asthma, degenerative joint disease of the left knee, and malingering." Id. At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment. Tr. 26.

Because plaintiff did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work, except that:

> she can frequently finger bilaterally; can occasionally climb ladders, ropes, and scaffolds; and can frequently stoop, kneel, crouch, and crawl. [Plaintiff] should avoid concentrated exposure to extreme cold and vibration, and to fumes, odors, dusts, and gases. [Plaintiff] can frequently reach overhead bilaterally and can frequently push and pull as much as she can lift and carry. She can frequently operate foot controls bilaterally.

Tr. 26.

At step four, the ALJ determined plaintiff was not capable of performing any of her past relevant work. Tr. 36. At step five, the ALJ resolved, based on the VE's testimony, that there were a significant number of jobs within the national economy that plaintiff could perform despite her impairments, such as motel cleaner, parking lot attendant, and storage facility rental clerk. Tr. 36-37.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) rejecting the medical opinion of Tatsuro Ogisu, M.D.; and (2) diverging from the 2010 ALJ's RFC without providing sufficiently specific justification.

### I. Medical Opinion Evidence

Plaintiff asserts the ALJ improperly disregarded Dr. Ogisu's functional limitations. Pl.'s Opening Br. 9 (doc. 13). At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present a clear and convincing reason supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (internal citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected for a specific and legitimate reason. Id.

Dr. Ogisu examined plaintiff in October 2014, conducting a "comprehensive general examination" and recording plaintiff's reported history of symptoms. Tr. 447-52. This examination included testing to determine the extent of plaintiff's limitations. Id. Dr. Ogisu expressed concern about the accuracy of such testing given plaintiff's unwillingness to participate in several of the functional tests, poor effort, exaggerated pain reactions, and "overt catastrophizing." Tr. 449-51. In fact, Dr. Ogisu stated that "any possibility of establishing a sound clinical basis for [plaintiff's]

pain problems was eliminated by her conduct." Tr. 451. Nevertheless, in the "Functional Limitations" section of his report, Dr. Ogisu opined, in relevant part, that plaintiff was limited to occasional handling and reaching with the left arm. Id. However, the doctor clarified that this restriction was a "[r]ough estimate . . . based on prior diagnoses and imaging or test reports," as he was "not able to conclude anything about [plaintiff's] ability to perform work-related activities based on objective findings." Id.

The ALJ discussed Dr. Ogisu's assessment multiple times in the decision, both describing the doctor's observations of plaintiff during testing and weighing the doctor's findings. Tr. 28-29, 31-32, 35. Ultimately, the ALJ credited Dr. Ogisu's observations and the majority of the doctor's opinion but rejected the stated functional limitation of occasional left-sided handling and reaching. Tr. 35. The ALJ did not "find persuasive" this aspect of Dr. Ogisu's opinion due to the inconsistencies in his report, as well as other contradicting medical evidence. Id.

An ALJ may reject a doctor's opinion that contradicts the doctor's observations. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692–93 (9th Cir. 2009). In other words, the ALJ's determination that the "opinion is clearly inconsistent with the medical notes that [the doctor] made during examinations" justifies the rejection of that opinion. Weetman v. Sullivan, 877 F.2d 20, 22-23 (9th Cir. 1989). Additionally, a doctor's suggestion that his or her findings are tentative is a legally sufficient reason to discredit those findings. See, e.g., Williamson v. Comm'r of Soc. Sec., 438 F. App'x 609, 611 (9th Cir. 2011) (affirming the ALJ's rejection of a medical opinion because the doctor acknowledged "that her conclusions were tentative and might over-represent the degree of pathology because objective testing showed exaggeration").

An independent review of the record reveals substantial evidence to support the ALJ's treatment of Dr. Ogisu's opinion. As the ALJ noted, during Dr. Ogisu's testing plaintiff

"demonstrate[d] having no grip strength whatsoever," and performed finger tapping "very slowly and feebly." Tr. 28, 450. When she was not being tested, however, Dr. Ogisu observed that plaintiff's hands were "quite active," and plaintiff had "a folder full of medical documents from which she selected and sorted documents proficiently." Id. Dr. Ogisu also remarked that plaintiff was "distractible" from tenderness in carpal tunnel areas, leading the ALJ to reasonably conclude plaintiff's "carpal tunnel symptoms and limitations were not as severe as alleged." Tr. 28-29, 450.

Further, other portions of the record reflect plaintiff's inconsistent efforts during examinations. Tr. 390-734. For instance, Rolph Sohlburg, M.D., examined plaintiff in 2009 and was "not convinced" she had carpal tunnel syndrome based on objective test results and "signs that suggested she wasn't giving full effort." Tr. 363. Likewise, one of plaintiff's primary care physicians, Hyrum Durtischi, D.O., noted plaintiff's lack of effort during multiple examinations in September and October 2014. Tr. 456. The ALJ also referenced the examinations of Harry Reahl, M.D., and David Wilkinson, M.D., both of whom observed that plaintiff gave "no effort" or refused to attempt certain tests due to purported pain. Tr. 30-32, 397, 402.

Additionally, the objective medical record contracts Dr. Ogisu's reaching and handling limitations. Another of plaintiff's primary care physicians, Laura Longwell, D.O., reviewed plaintiff's normal EMG and nerve conduction studies in March 2016 and concluded that the results provided no objective medical cause for plaintiff's reported pain. Tr. 599-600. Similarly, Frances Verzosa, M.D., examined plaintiff in March 2015 and documented her reports of "moderate to severe pain with any movement," but nonetheless made findings of only "mild" and "minimal" irregularities based on x-rays and an MRI. Tr. 578, 584. Physician's assistant ("PA") Kimo Heen obtained motor strength results that contradicted the prior testing where poor effort was noted. Tr.

592-93. Namely, as the ALJ stated, "motor strength testing revealed five out of five strength throughout in all areas tested, including all four extremities." Tr. 33, 592-93.

Finally, state agency consulting physician, Richard Alley, M.D., reviewed the record in February 2015 and found that plaintiff "could perform light work [and] could frequently perform bilateral fingering." Tr. 34, 147-48. The ALJ gave "great weight" to Dr. Alley's opinion because it encompassed all of plaintiff's medical conditions and was consistent with the objective medical evidence of record. Tr. 34-35. Therefore, the ALJ's rejection of Dr. Ogisu's left-sided handling and reaching limitation is affirmed.

## II.     2010 ALJ Findings

Plaintiff argues that the ALJ erred by failing to provide a specific description of the prior ALJ's findings and failing to discuss whether there was enough new evidence to support the rejection of certain limitations in the 2010 RFC. Pl.'s Opening Br. 9 (doc. 13). When reviewing a prior denial of benefits, an ALJ must apply a presumption of continuing non-disability to the current application unless the presumption is rebutted by changed circumstances. SSR 97-4(9), available at 1997 WL 742758. A change in age category or the existence of new medical evidence constitutes a changed circumstance sufficient to rebut the presumption of ongoing non-disability. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).

Although Chavez requires the second ALJ to apply "some res judicata consideration" to the findings of a prior ALJ, the plaintiff must establish "the ALJ improperly reconsidered prior findings, i.e., reconsidered prior findings based strictly on information already presented to the first judge." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (quoting Chavez,

844 F.2d at 694).² Reconsideration is appropriate when there is "new and material information not presented to the first ALJ." Id.

The presence of new and material information allows the ALJ to overcome the presumption of continuing non-disability and provide an updated RFC, even if the new evidence is not "directly contradictory" to the original evidence: "the ALJ must simply find some evidence of a 'changed circumstance' that warrants departing from the previous finding." Wilson v. Comm'r, Soc. Sec. Admin., 2016 WL 1598867, at *4 (D. Or. Apr. 20, 2016). If the ALJ finds the record contains enough new and material information to support a different RFC, the ALJ may "redetermine" the RFC based on the additional evidence. Herbert v. Colvin, 2014 WL 4956448, at *3 (D. Or. Oct. 1, 2014); see also Alekseyevets v. Colvin, 524 F. App'x 341, 344 (9th Cir. 2013) ("the Chavez presumption does not prohibit a subsequent ALJ from considering new medical information and making an updated RFC determination"). In sum, the ALJ is not required under Chavez to maintain a prior RFC if subsequent medical records present enough evidence to support a different conclusion. Herbert, 2014 WL 4956448 at *4.

Here, as detailed in part above, the ALJ reviewed over 300 pages of additional medical records arising after the 2010 ALJ decision. Tr. 390-734. Given the ALJ's thorough review of this new and material evidence, coupled with the ALJ's updated RFC, it can be reasonably inferred which findings from the 2010 decision were adopted and which were rejected. Tr. 24-37. As the Ninth Circuit determined, it is proper for the court to "draw specific and legitimate inferences from the ALJ's opinion" where the ALJ has "summarized the facts and conflicting clinical evidence in

---

² Plaintiff argues Stubbs-Danielson is inapplicable because in that case the prior ALJ made a determination of disability, whereas here the prior ALJ found plaintiff not disabled. Pl.'s Reply Br. 3 (doc. 15). However, relevant to this case, Stubbs-Danielson addressed the interplay between new and material information on the Chavez presumption.

a detailed and thorough fashion, stating his interpretation and making findings." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

For instance, the ALJ in this case addressed new evidence related to plaintiff's carpal tunnel condition, referencing the findings of Dr. Durtischi from June 2014, Dr. Ogisu from October 2014, and PA Heen from April 2015. Tr. 28-29, 33, 422, 590 In addition to their observations of inconsistent effort, each of these medical providers found only limited clinical indications of carpal tunnel syndrome. Tr. 31-32, 451, 516, 593.

The ALJ also discussed new evidence related to plaintiff's back, neck, and knee pain, including the findings of Hans Moller, M.D., from April and June 2014, Dr. Verzosa from January 2015, and Dr. Longwell from December 2015. Tr. 29-30, 32-33, 410, 576, 599. Significantly, Dr. Moller noted "unremarkable" findings based on examinations related to knee pain, with x-rays showing only "benign" irregularities. Tr. 29, 410. The evidence from Drs. Longwell and Verzosa likewise demonstrates minimal objective findings in regard to plaintiff's back and neck pain. Tr. 578, 599.

Moreover, the ALJ discussed new evidence related to plaintiff's neuropathy, referring to the findings of Drs. Reahl and Wilkinson from July 2013 and March 2014, respectively. Tr. 30. Both doctors described "normal" and "unremarkable" findings related to examinations and imagining studies. Tr. 30, 397, 402.

In sum, limitations in the 2010 RFC were not "dropped without explanation," as plaintiff asserts. Pl.'s Opening Br. 13 (doc. 13). Instead, the ALJ provided a detailed review of copious new medical records, demonstrating there is substantial evidence to support a less restrictive RFC. In addition to the new medical records, the ALJ also relied on the more recent opinion evidence from Drs. Ogisu and Alley. Tr. 147, 450-51. Significantly, the ALJ found Dr. Alley's opinion

"consistent with the objective evidence of record that documents some findings on imaging and testing, and some modest physical examination findings of occasional tenderness and decreased sensation." Tr. 34. The ALJ relied on Dr. Alley's RFC, as opposed to the 2010 ALJ's RFC, because Dr. Alley's RFC reflected the additional medical records. Id. Thus, the ALJ did not err by providing an updated RFC based on new material evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 17th day of July, 2019.

                    /s/ Jolie A. Russo
                    Jolie A. Russo
                    United States Magistrate Judge